UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DARREN EVANS,<br><br>                          Plaintiff,<br>     v.<br><br>DUANE MEYER, an individual, WASHOE COUNTY, a political subdivision of the State of Nevada<br><br>                          Defendant. | Case No. 3:14-cv-00103-MMD-WGC<br><br>ORDER<br><br>(Def.'s Motion to Dismiss<br>– dkt. no. 32) |

**I.   SUMMARY**

Before the Court is Defendants Duane Meyer ("Meyer") and Washoe County's Motion to Dismiss. (Dkt. no. 32.) The Court has reviewed Plaintiff Darren Evans' ("Evans") response (dkt. no. 35) and the Defendants' reply (dkt. no 36.) For the reasons discussed below, the Motion is granted.

**II.   BACKGROUND**

This Court dismissed Evans' First Amended Complaint ("FAC") and granted him leave to file a Second Amended Complaint ("SAC"). (Dkt. no. 29.) He did so on March 23, 2015. (Dkt. no. 30.) Meyer and Washoe County argue that Evans has not cured the deficiencies in his First Amended Complaint, and therefore his Seconded Amended Complaint should also be dismissed for failing to state a claim.

The following background facts are taken from the Second Amended Complaint.

Evans is a law enforcement officer employed by the Washoe County Sheriff's Office ("Sheriff's Office"). (Dkt. no. 30 at 1.) He was born in England and served in the British military. (*Id.* at 2.)

Meyer is a captain in the Sheriff's Office; he was a sergeant in 2005 and was Plaintiff's supervisor at that time. (*Id.* at 1.) Evans alleges that in 2005, Meyer sang "God Save the Queen" around him in order to humiliate him in front of coworkers and inmates. (*Id.* at 2.) This conduct occurred more than once. (*Id.*) Evans reported Meyer to a supervisor, Lt. Vorderbrugen, but the department did not take any action in response to Evans' complaint. (*Id.*)

A year later Meyer was investigating a stalking complaint filed against another employee of the Sheriff's Office. The woman who filed the complaint was a friend of Evans. During his investigation, Meyer asked the woman about her relationship with Evans. Evans believes that Meyer's questions were intended to retaliate against Evans for reporting Meyer's behavior to Lt. Vordenbrugen. (*Id.* at 2-3.)

Evans also alleges that Meyer, in his capacity of Evans' supervisor, initiated several unfounded counseling notices, which, though unexplained, seem to be a type of disciplinary or training practice within the Sheriff's Office. (*Id.* at 3.) Evans believes that these counseling notices were further retaliation against him. (*Id.*)

Evans further alleges that Meyer was involved in opening an Office of Professional Integrity investigation against him based on a citizen's complaint ("OPI Investigation"). Evans believes this was retaliation because Meyer was not in a position that would typically be involved in starting such an investigation. (*Id.*)

In Evans' 2012 and 2013 employee evaluations, he noted in a space for employee comments that he was being subjected to a hostile work environment based on his national origin and his complaint against Meyer. (*Id.*) In response to his 2012 comments, Evans was directed to contact a Lt. Clark, which he did. However, Evans alleges the Sheriff's Office did not take any action in response to either his 2012 or 2013 comments. (*Id.*)

Evans alleges that someone, at the direction of Meyer, accessed his email account and deleted at least one of his emails regarding Meyer's behavior. (*Id.*)

Plaintiff asserts claims under 42 U.S.C. § 1983, alleging violations of his rights under the Fourteenth Amendment and the First Amendment. He appears to assert both claims against Washoe County as well as Meyer. Defendants seek dismissal under Rule 12(b)(6).

### III.  LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not

3

entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

**IV.   DISCUSSION**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Here, Plaintiff alleges violations of his rights under the Fourteenth Amendment and the First Amendment.

**A.   Claims Against Washoe County**

Defendants argue that Evans has not alleged facts that would support municipal liability for Washoe County. Specifically, Defendants argue that Evans failed to identify any policy, custom, or practice that resulted in either discrimination against Evans or

retaliation for complaining about discrimination. (Dkt. no. 32 at 8.) Evans responds that the Sheriff was a final policy maker (as defined by *Pembauer* and *Praprotnik*, *infra*) for personnel issues, and that when he delegates responsibility, he also delegates his policy making authority, essentially spreading the county's liability down the chain of command. (Dkt. no. 33 at 2.) Consequently, Evans believes that Meyer was acting as a final policy maker when he ordered counseling and started an OPI Investigation based on a complaint. Under the same logic, Evans argues that Lt. Clark and Lt. Vorderbrugen were final policy makers when they failed to take action on Evans' complaints. (Id.; dkt. no. 30 at 2.) According to Evans, their inactions amounted to ratification of discrimination and harassment, which in turn results in municipal liability. (Dkt. no 20 at 2-3.)

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty*, 654 F.3d at 900 (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)).

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988), the Court held that a single event can give rise to municipal liability under § 1983:

> We [the court] have assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business . . . . At the other end of the spectrum, we have held [in *Tuttle*] that an unjustified shooting by a police officer cannot, without more, be thought to result from official policy. (citations omitted).

In fact, in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986), "the Supreme Court held that a single decision by a municipal policymaker may be sufficient to trigger

5

section 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (citing *Pembaur*, 475 U.S. at 480-81 (remaining citations omitted)). "There must, however, be evidence of a conscious, affirmative choice." *Id.* "Municipal liability under section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1348 (quotation marks and citations omitted). "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [government body]." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004).

To show that a final policymaker ratified an action, a plaintiff must establish that the "authorized policymakers approve a subordinate's decision and the basis for it." *Lytle* 382 F.3d at 987 (internal citations omitted). For liability to attach, the policymaker must have knowledge of the constitutional violation and actually approve of it. *Id*. However, a failure to overrule a subordinate's actions, without more, is insufficient to support the imposition of liability against the municipality. *Id.*; *see also Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir.2013) (a "single failure to discipline" an officer does not rise to the level of official ratification).

Evans' SAC has not alleged sufficient facts to state a claim involving municipal liability. Though Evans is correct to argue that Washoe County could be liable for actions taken pursuant to delegated authority, the allegations on which he relies do not support such a theory. The inaction of Lt. Clark and Lt. Vorderbrugen is exactly the type of behavior which *Lytle* and related cases make clear is not sufficient to trigger municipal liability. And Evans' argument that Meyer was acting as a final policymaker when he initiated inappropriate counseling sessions is unsupported by the allegations in the SAC. Evans simply states that Meyer was a final policy maker. He does not allege any facts indicating that Meyer was acting pursuant to any state law, departmental policy, or any other rule that would allow the Court to make a reasonable inference that his decisions

should be attributed to Washoe County. Therefore the Court has no basis from which to attribute the actions of Meyer, Lt. Clark, or Lt. Vorderbrugen to Washoe County as a whole.

The Court may deny leave to amend when a party has repeatedly failed to correct deficiencies or amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Evans was given the opportunity to cure this defect after his FAC was dismissed. He has failed to do so, and the Court believes that further amendment would be futile. Therefore Evans' claims against Washoe County are dismissed with prejudice.

### B.     Claims Against Duane Meyer

#### 1.     Equal Protection

This Court dismissed the equal protection claim in Evans' FAC because his allegations were conclusory and a formulaic recitation of the elements of the cause of action. (Dkt. no. 29 at 5.) The only amendment that Evans has made in regards to Meyer's intent or purpose to discriminate based on national origin is the addition of the allegation that "Meyer acted with the intent or purpose to discriminate against Plaintiff." (Dkt. no. 30 at 4.) Formulaic recitations are not cured by the addition of equally formulaic recitations. Evans' SAC fails to state a claim for an equal protection violation.

Evans fails to correct the deficiencies outlined in the Court's earlier order. Therefore Evans equal protection claim against Meyer is dismissed with prejudice. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d at 532.

#### 2.     Retaliation

Defendants argue that Evans has not alleged that he engaged in any protected speech, and even if he has, he failed to allege anything that could be considered an adverse action against him. (Dkt. no. 34 at 11, 15.) Evans responds that his complaints about Meyer and the feedback he provided during his employee evaluation constituted a matter of public concern, and were therefore protected under the First Amendment. Evans argues Meyer's launch of an OPI Investigation against him, as well as the deletion

of his emails, were adverse actions taken against him in retaliation for his speech. (Dkt. no. 35 at 7-8.)

A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 708-09 (9th Cir. 2009) (quoting *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir.2009)). The plaintiff must satisfy the first three steps of the five-step test. *Ellins v. Cnty. Of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing *Eng*, 552 F.3d at 1070). If the plaintiff succeeds, then the burden shifts to the defendant to establish the fourth and fifth steps. *Ellins*, 710 F.3d at 1046 (citing *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)).

Whether a public employee or contractor's expressive conduct addresses a matter of public concern is a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n. 7, (1983). This determination is made in light of "the content, form, and context" of the expressive conduct "as revealed by the whole record." *Id.* at 147-48. Speech that allows the public to make "informed decisions about the operation of their government" is generally protected while "individual personnel disputes and grievances" that would have little effect on the public's evaluation of a government entity are generally not. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003)). In certain contexts, "[d]isputes over racial, religious, or other such discrimination by public officials are not simply individual personnel matters," because they affect, "societal interest as a whole." *Id.* at 926.

The first factor that this Court considers is whether Evans' speech addressed a matter of public concern. The speech which Evans identifies involves 1) a 2005

8

complaint to Lt. Vorderbrugen addressing Meyer singing "God Save the Queen," 2) a notation in a 2012 employee evaluation that Meyer was subjecting him to a hostile work environment based on his national origin and previous complaints, and 3) a similar notation in a 2013 employee evaluation. (Dkt. no. 30 ¶¶ 9, 14, 15.)

Evans characterizes his complaints as speech concerning harassment based on his national origin — behavior strictly forbidden by federal law, state law, county regulations, and Sheriff's Office policy. (Dkt. no. 35 at 4.) The Ninth Circuit has held that speech about unlawful discrimination by public officials is more than a simple individual personnel matter. *Hansen*, 381 F.3d at 926; *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011). However, the form and context of speech is also relevant to whether it is considered a matter of public concern. In both *Hansen* and *Clairmont*, the speech in question took place at public hearings.

The speech that Evans has identified exclusively took the form of written complaints to supervisors. Speech in the form of internal employee grievances, rather than some sort of public statement, cuts against a finding of public concern. *Desrochers v. City of San Bernardino*, 572 F.3d at 715; *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1211 (9th Cir. 2015) (public employee's speech was not a matter of public concern when he voiced grievances to his supervisor and human resources department rather than a government agency, the press, or other public forum). Courts recognize a difference between personal grievances made within an employer's chain of command and statements made to outside bodies. *Compare Shepard v. City of Portland*, 829 F. Supp. 2d 940, 967 (D. Or. 2011) (plaintiff's complaints to the Oregon Bureau of Labor and Industry alleging discrimination by public officials was speech on a matter of public concern) *with Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002) (corrections officer's speech was not a matter of public concern when only made to internal affairs investigators even though it involved a civil rights issue.) While the former may trigger liability for retaliation under Title VII of the Civil Rights Act, they do not implicate the First Amendment.

The Court agrees with Defendants that Evans has not adequately pled facts indicating he engaged in speech on a matter of public concern. Because amendment would be futile, Evans' First Amendment claim based on retaliation is dismissed with prejudice.

### 3. Hostile Work Environment

Defendants read Evans' SAC to include a hostile work environment claim and argue that it should be dismissed as well. However, the Court does not understand Evans' SAC to contain a hostile work environment claim. The Court's first order granting Defendants' motion to dismiss did not address any such claim. (Dkt. no. 29.) Nor did Evans' response to the current motion to dismiss claim that such a claim is asserted. (Dkt. no. 35.) The only reference Evans makes to a hostile work environment is in ¶ 18 of the SAC, where Evans states: "The adverse actions include the above, which collectively constitute a hostile and abusive working environment under the 'reasonably likely to deter' standard." (Dkt. no. 30.) The Court understands this paragraph to be part of Evans' First Amendment retaliation claim, and not a standalone claim for a hostile work environment.

## V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion to Dismiss (dkt. no. 32) is granted. The Clerk is directed to enter judgment in favor of Defendants and close this case.

DATED THIS 7th day of January, 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

10